cause us to impose sanctions. Local 745's request for sanctions is denied.

### Conclusion

The district court acted within its discretion in denying plaintiff's motion for continuance and in dismissing the suit for want of prosecution. Therefore, we affirm the judgment.

AFFIRMED.

**UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL NO. 626, Plaintiff-Appellant,**

v.

**KROGER COMPANY, Defendant-Appellee.**

No. 84–3884.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 1, 1985.

Decided Dec. 10, 1985.

Rehearing and Rehearing En Banc Denied Jan. 29, 1985.

---

**9.** Rule 38, Fed.R.App.P., provides:

**"Damages for Delay**

"If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee."

**10.** 28 U.S.C. § 1912 provides:

**"Damages and costs on affirmance**

"Where a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs."

*28 U.S.C. § 1927* provides:

**"Counsel's liability for excessive costs**

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Ted Iorio (argued), Gallon, Kalniz & Iorio Co., Toledo, Ohio, for plaintiff-appellant.

Rolf Scheidel (argued), Toledo, Ohio, Shumaker, Loop & Kendrick, for defendant-appellee.

Before LIVELY, Chief Judge, CONTIE, Circuit Judge and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

United Food and Commercial Workers Union, Local 626 ("Union") appeals from an order of the district court denying the Union's request for a preliminary injunction preventing the Kroger Company ("Kroger") from disposing of its interest in its three Lima, Ohio stores pending arbitration of a grievance filed by the Union. Although it ordered arbitration of the Union's grievance, the trial court refused to issue a preliminary injunction, holding the Union had failed to demonstrate the existence of equitable grounds supporting the issuance of the requested relief. Because we determine that the district court did not abuse its discretion, we affirm its refusal to issue a preliminary injunction.

## I.

### Background

Kroger operates approximately 1,090 retail grocery stores in eighteen states, including Ohio. Prior to September 23, 1984, Kroger operated three stores in Lima, Ohio, owning one of the buildings and leasing the other two properties. The Union is a signatory to a collective bargaining agreement ("Agreement") with Kroger, effective until October 25, 1986, which establishes the Union as the exclusive bargaining representative for all employees in the meat and seafood departments of Kroger's Lima stores.[1] The Union represents, in this action, twenty-three former employees of the Lima stores who worked in the meat and seafood departments.

During 1982 and 1983, Kroger's Lima stores operated at a loss, with Kroger losing over $240,000 in the first four and a half months of 1984. In early June of 1984, Kroger attempted to initiate wage concession discussions with the Union and requested a meeting with David Gelios, the president of the Union, to discuss labor costs at the Lima stores. On June 11, the Union responded that it did not intend to

---

1. Employees in other departments in the Lima stores are represented by United Food and Commercial Workers Union, Local 1059, which has a separate bargaining agreement with Kroger. Neither Local 1059 nor any of its members is a party to this action.

reopen the existing contract for any modifications of wage or benefit terms. Kroger forwarded its proposal to the Union on July 3 and indicated that if it did not hear from the Union by July 13, 1984, Kroger would "proceed immediately to discontinue [its] Lima operations." On July 24 and September 7, meetings between Kroger and the Union were held with each party submitting proposals for wage and benefit cuts.

On August 15, Kroger advised the Union that unless its proposals were ratified by August 24, 1984, the Lima stores would be closed no later than September 22, 1984. Notice was given by Kroger to the Lima store employees that the stores would close on September 22, 1984.

On September 20, the Union sent a telegram to Kroger protesting Kroger's plans to dispose of its Lima stores. It was the Union's position that "any sale by Kroger of the Lima stores would be subject to the 'successors and assigns' language contained in the Agreement."[2]

A formal grievance was filed by the Union on September 27, 1984, alleging that "[t]he Company violated the entire agreement as well as the successors and assigns language of the preamble." Counsel for the Union advised Kroger that unless Kroger imposed upon a purchaser or a transferee an obligation to recognize the Union, adopt the Agreement and employ members of the Union covered by the Agreement, Kroger would be in breach of the Agreement. The Union requested expedited arbitration of its grievance before any sale of the Lima stores.[3]

On September 28, Kroger sent a telegram and a letter to the Union advising counsel for the Union that Kroger did not consider the Union's complaint to state a "grievance" cognizable under the Agreement.[4] The communication further stated that:

[n]either the Local 626-Kroger bargaining agreement nor National Labor Relations policy, as defined by the courts and the NLRB, requires the company to impose upon the purchaser(s) of the three Lima store meat departments an obligation to (A) recognize the Union (B) adopt the bargaining agreement or (C) hire certain employees. The parties' agreement exclusively vests in the company broad managerial discretion regarding the direction and control of store operations, including where and when stores will be opened/closed.

Kroger indicated that at present a purchaser had not been located for the Lima stores and that when the stores were sold, the party would be furnished a copy of the Agreement.[5]

2. The preamble to the Agreement reads as follows:

THIS AGREEMENT entered into by and between The Kroger Co., Columbus, Ohio and Solon, Ohio, hereinafter designated as the Employer, its successors and assigns, and Local 626 of the United Food and Commercial Workers Union, chartered by the United Food and Commercial Workers International Union, AFL–CIO/CLC.

3. The Agreement has no provision for "expedited" arbitration. The dispute procedure contained in the Agreement provides ultimately for binding arbitration of "any differences, disputes or complaints aris[ing] over the interpretation or application of the content of [the] Agreement."

4. On September 13, 1984, the Union filed an unfair labor practice charge with the National Labor Relations Board, alleging certain violations of § 8 of the National Labor Relations Act, 29 U.S.C. § 158 (1976). Included within the charge was the allegation that Kroger refused to discuss the terms and the conditions of employment as it related to Kroger's plans to close its Lima operations. The charge was subsequently denied by the Board. None of these issues is now before us.

5. Kroger contends that the language relied upon by the Union to impose an obligation on Kroger is simply boilerplate, introductory language which identifies the parties to the Agreement and not the rights and the obligations of the parties. At best, Kroger states, such language may bind an entity which acquires the entire business of Kroger, rather than simply bind a purchaser who acquires a small fraction of its business.

Kroger supports its argument by pointing to Article 10 and Article 13 of the Agreement. These provisions outline employee rights to separation and severance pay in the event of a store closing. Additionally, Kroger directs the court's attention to Article 4 of the Agreement

The Union filed suit in the United States District Court for the Northern District of Ohio on October 2, 1984, alleging a violation of the Agreement, pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1976). The Union sought: (1) a temporary restraining order and a preliminary and a permanent injunction enjoining Kroger from disposing of the three Lima stores pending resolution by an arbitrator of the September 27 grievance filed by the Union; (2) a declaratory judgment that Kroger violated the Agreement; (3) a preliminary and a permanent injunction restraining Kroger from refusing to arbitrate the grievance; and (4) compensatory damages, costs and attorney's fees. The Union complained that unless Kroger was restrained from selling its Lima stores and ordered to arbitrate, its members would be irreparably harmed and would have no adequate remedy at law.

On October 9, 1984, the district court held an evidentiary hearing to consider the Union's request for a preliminary injunction preventing Kroger from transferring ownership to its three Lima stores pending arbitration of the grievance. Evidence was presented to the court which indicated that Kroger's capital investment in the three stores was $3,000,000 and that in 1984 Kroger had lost $461,000. Kroger acknowledged that it was negotiating with purchasers for the Lima stores and indicated that a delay in the sale of one or two months would result in a loss of almost a half million dollars in perishable inventory. Kroger further indicated that if the stores were not sold in time for a new operator to begin business by Thanksgiving, the value of the asset would fall by thirty to fifty percent.

On October 23, 1984, the district court denied the Union's request for a preliminary injunction pending arbitration of the grievance. Utilizing the test articulated in

*International Union United Automobile, Aerospace and Agriculture Implement Workers of America v. Lester Engineering Co.,* 718 F.2d 818, 822 (6th Cir.1983), for the issuance of a *Boys Markets* [6] injunction, the trial court determined that equitable grounds for the issuance of an injunction had not been demonstrated. The district court, however, ordered arbitration of the grievance filed by the Union. The Union then appealed the denial of a preliminary injunction.

On October 25, 1984, the Union filed a motion in district court requesting an injunction pending appeal, which was denied, and, subsequently, the Union moved this court for an injunction pending the appeal. That motion and a motion filed in this court for an expedited hearing were denied on November 25, 1984.

The ultimate issue before this court on appeal is whether the district court abused its discretion in denying the Union's request for a preliminary injunction prohibiting the sale of the stores pending arbitration.

## II.

### Propriety of Review

Kroger initially contends that any review by this court of the propriety of the district court's refusal to issue the injunction is unwarranted since, it contends, the admitted sale of its Lima operations has now rendered this dispute moot. The Union concedes that, under ordinary principles of justiciability, its claim is moot. It contends, however, that the issue presented is capable of repetition and yet evades review and that, therefore, the case before us presents a controversy under Article III of the Constitution.

■ This doctrine upon which the Union relies was first recognized in *Southern Pa-*

---

which states that "[t]he management and control of the business ... are vested exclusively in the Employer, subject only to the seniority rules, grievance procedure and other provisions of this Agreement." The effect of these provisions, Kroger contends, is to negate any broad

reading of the language contained in the preamble of the Agreement.

**6.** *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

*cific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), and remains a viable doctrine. *Weinstein v. Bradford*, 423 U.S. 147, 148–49, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975). We conclude that the issue presented by the denial of the preliminary injunction in this case meets both requirements for the application of this doctrine.

The issue between these parties is certainly capable of repetition since this same collective bargaining contract between the parties covers many other Kroger stores in northwestern Ohio. If Kroger sought to dispose of another of these stores without requiring an assumption of the obligations of the collective bargaining contract by the purchaser, the same issue would be presented.

The question whether the claim can be said to evade review is a more difficult one. It is clear, at least, that in the normal course of events the claim presented in the appeal before this court, i.e., whether the Union is entitled to an injunction pending arbitration, could not be fully litigated before the sale of the stores was consummated. Kroger argues, however, that the issue does not evade review because the issue of whether the sale of the stores involved in this very case constituted a breach of the collective bargaining contract remains to be litigated in the arbitration proceeding. Kroger further points out that if an arbitrator determines that there was a breach of contract, back pay and damages may be awarded. In this connection, Kroger relies on language in *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). There an action was brought against the City and certain police officers by a plaintiff who alleged that he was severely injured by a "chokehold" applied to him without cause by the police when he was stopped for an alleged traffic offense, and that such was done pursuant to City policy. Plaintiff sought damages and an injunction prohibiting the use of the "chokehold" in similar circumstances. Plaintiff had obtained a preliminary injunction and, in the Supreme Court, the question was whether the claim

for an injunction presented a justiciable controversy. It had been suggested to the Court that the case had become moot since the City had amended its policy with respect to the use of the "chokehold." The Court held that the case was not moot "[s]ince the moratorium [on the "chokehold"] by its terms is not permanent." *Id.* at 101, 103 S.Ct. at 1664. The Court, nevertheless, held that "for another reason," *id.* at 101, 103 S.Ct. at 1664, the plaintiff should not have been granted an injunction, this reason being that he did not have standing to assert the claim for an injunction. The reason that plaintiff did not have standing, the Court explained, was that he could not demonstrate a likelihood that he would again be subjected to such treatment by the police. Although the Court had already expressly held that the case was not "moot," it took occasion to consider whether the claim was capable of repetition and yet evaded review and stated that the doctrine was "inapposite." *Id.* at 109, 103 S.Ct. at 1669. "[Plaintiff's] claim that he was illegally strangled remains to be litigated in his suit for damages; in no sense does that claim 'evade' review." *Id.* In the instant case, Kroger argues that, similarly, the Union's claim does not evade review because the arbitrator may determine whether there was a breach of contract and may award back pay and damages.

It appears to this court that the Supreme Court's statement that plaintiff's claim for an injunction against the City of Los Angeles did not evade review because his claim for damages remained to be litigated was at the most *dictum*. This is true because, as stated earlier, the Court had held that the issue raised by the claim for an injunction was not moot and had held that it was not justiciable for a different reason, that is, lack of standing. Moreover, in *Lyons*, the substantive issue presented in both the damage claim and the injunction claim was the constitutionality of the City's policy and the police conduct, and this issue would be litigated in connection with the damage claim. On the contrary, in the instant case,

while it is true that the Union's claim of breach of contract and its accompanying claims for back pay and damages will be litigated in the pending arbitration, the Union may not be able to obtain an arbitration ruling as to whether, if the stores had not been sold, Kroger would have been proscribed, under a proper construction of the contract, from selling the stores absent an assumption by the purchaser of the obligations of the collective bargaining contract. Thus, it appears to us that this important claim of the Union may well evade review.[7] By so holding we do not mean, of course, to indicate a view as whether the Agreement should be so construed.[8]

Accordingly, we determine that the Union's claim for an injunction pending arbitration is capable of repetition and yet evades review and therefore presents a justiciable controversy.

### III.

### Injunction Pending Arbitration

 As stated, while the district court enforced the Union's right to arbitration of the alleged breach of contract,[9] it denied the request for a preliminary injunction. In so doing, it recognized a requirement of *Boys Markets*, 398 U.S. at 254, 90 S.Ct. at 1594, reiterated by this court in *Lester Engineering*, 718 F.2d at 824, that, in addition to the other prerequisites to the issuance of an injunction in a labor dispute, it must be shown that the traditional bases for equitable relief are present. The district court then determined that equitable bases were not present and denied the in-

junction on that ground. Since we conclude that the district court, in making the determination, did not abuse its discretion, we need not decide whether the *Boys Markets* narrow exception to the Norris-La-Guardia Act's[10] proscription of injunctive relief in a labor controversy is applicable in the instant context.[11]

The district court determined, based on the evidence, that the failure to grant an injunction would not result in the Union's suffering "irreparable harm" since the court's order requiring arbitration substantially preserved the arbitration process, and an arbitrator could award, as Kroger concedes, back pay and damages if it is found that Kroger breached the contract. The district court also determined, balancing the equities, that Kroger would suffer substantial economic harm if an injunction were erroneously granted unless the Union posted a very large bond. As to the likelihood of success on the merits, the district court, while declining to rule on the merits of the Union's construction of the collective bargaining contract, intimated that there was at least substantial doubt whether the Union's construction of the Agreement was correct. Taking all of these factors into consideration, the district court concluded that it should not issue the preliminary injunction.

The Union concedes that the district court can be reversed only if it abused its discretion. We need not here decide whether the district court was correct in each of its conclusions. After considering the record before the district court, we decline to find that it abused its discretion.

---

7. Kroger concedes only that, if the arbitrator found a breach of contract, back pay and damages could be awarded.

8. Another factor that distinguishes the instant case from the facts presented to the Court in *Lyons* is the fact that here we must take into consideration the very strong policy of protecting the arbitration process provided for in a collective bargaining contract. *Boys Markets*, 398 U.S. at 249, 90 S.Ct. at 1591; *Buffalo Forge Co. v. United Steel Workers*, 428 U.S. 397, 407, 96 S.Ct. 3141, 3147, 49 L.Ed.2d 1022 (1976).

9. Although Kroger's position was that the Union's claim was not subject to arbitration, it does not contend in this court that the district court erred in holding that the claim was subject to arbitration.

10. 29 U.S.C. § 104 (1976).

11. The Union has described its claim for an injunction here as being a "reverse *Boys Markets*" claim. Clearly, to agree with the Union's contention requires a broadening of the *Boys Markets* exception.

The judgment of the district court is, accordingly, AFFIRMED.